Good morning, your honors. May it please the court. Tommy Vu, Federal Defenders of San Diego, on behalf of Appellant Mr. Raul Jimenez. Mr. Jimenez's defense at trial was that he did not know there were drugs hidden in the car that he was driving as he was crossing the border on January 31st, 2011. Evidence of Mr. Jimenez's prior border crossings should never have come in to 1. establish his dominion and control over the rental car, and 2. to provide the government a plan to explain why Mr. Jimenez was not nervous when he was crossing. Both of these reasons are flawed. Turning to my first point, dominion and control. Mr. Jimenez was the sole occupant of the car. It was leased to him. His name was on the rental agreement, and in the government's own independent research and investigation, they found that out. They even called a witness from Enterprise, in their case in chief, to establish that Mr. Jimenez had rented the car from December through January. The defense even stipulated or was willing to stipulate to that. Not only was the defense willing to stipulate that Mr. Jimenez had dominion and control of the car, but they were... You well know the government doesn't have to accept your proposed stipulations. Of course not, Your Honor, and obviously... The court can't force the government to accept them. You're absolutely right, Your Honor. The government can present their case however they want, but in this particular case, not only was the defense willing to stipulate to the exact reason for why the government wanted this evidence in, but we were willing to give them even more probative value. Not only were we willing to stipulate to the fact that Mr. Jimenez had dominion and control over the vehicle, we were willing to stipulate that he would not run the defense, that someone else was in the possession of his car, that he had given the car to someone else. So not only was the exact same probative value given through the stipulation, but we were willing to even concede that we were not going to run that defense. In addition to that, allowing the stipulation to be entered in, we wouldn't have had the prejudicial value in this particular case. Now, the prejudicial value in this particular case is the high speculation that would be involved once the jury hears that Mr. Jimenez had crossed 10, 15 times within the past month. Upon hearing that, an individual who may not be as familiar with crossing the border so often may not be The judge gave a jury instruction though, an admonition to the jury. Well, Your Honor, the judge did give a limiting instruction, but it was not a 404B limiting instruction. And as I argued in my brief, the limiting instruction was insufficient for a number of reasons. First, it wasn't a 404B instruction. And so the limiting instruction did not provide guidance to the jury as to what they could consider it for. In fact, it was very confusing. You told him you can't assume or you can't infer that on those prior occasions he was bringing in drugs. Yes, Your Honor. The limiting instruction did say that you could not infer from the evidence of the prior crossings that he did not cross drugs. However, it did not provide the jury with a reason for why it was considering it. In fact, the sentence immediately right after said you may infer that this is circumstantial evidence of guilt. And so on one hand, the instruction says you can't infer that he was crossing drugs. But then the sentence immediately after that says, but you can infer it for guilt. And so with the 404B instruction, on the other hand, it specifically states this evidence, this evidence is entered to establish motive. It's established intent, plan, preparation. In this particular case, it didn't provide that. Did you offer such an instruction? We did, Your Honor. We argued that evidence of prior crossings should be subject to Rule 404B. Obviously, the district court disagreed and were not willing to instruct with the standard 404B instruction. We asked for this limiting instruction to be provided before closing argument. The district court did not provide it before closing argument. It was after rebuttal where we renewed our request to provide that limiting instruction that it was given. But what instruction did you propose? Well, Your Honor, we argued that it was that evidence of prior crossings was subject to 404B. And so we obviously wanted an instruction, the standard instruction for 404B, Your Honor. But did you – Judge Noonan's question was what jury instruction did you propose? Well, Your Honor, because of the ruling of the court, the district court was of the mind that it was not going to give the 404B instruction. So you didn't propose any instruction? No, Your Honor. Given the definitive ruling that the district court made in terms of this, that this evidence was not subject to 404B, we were of the mind that it would not be appropriate to ask for such an instruction if the judge had already found that it was not subject to 404B. So whatever slight probative value that dominion and control had, it was substantially outweighed by the prejudice in this particular case. Did the judge do a 403 analysis? Your Honor, the judge did not specifically weigh, which is the district court rejected out of hand our offer to stipulate, and the judge did not explicitly provide a 403 balancing test. But you argued that it was prejudicial. We did, Your Honor. We argued it for a – And you asked it to be excluded under 403, correct? Yes, Your Honor. We asked for it to be excluded. Do you think the judge listened to your arguments? I'm sure the judge did, Your Honor. And so the second point I do want to raise is another reason why the district court did admit the evidence of the prior crossings was to establish a lack of nervousness. And as I stated in my briefs, whether Mr. Jimenez was nervous or not nervous on the day of his arrest is not relevant. It's not probative to the only issue in our case, which is, did Mr. Jimenez know there were drugs in his car on January 31st? Now, there was simply no evidence, no evidence in the record to suggest on any of his prior crossings whether there were any signs of nervousness. There was no testimony from an expert saying an individual crosses a lot so that he becomes more familiar with the process. There was no testimony from the expert of, you know, burning the plates or anything of that nature. And so it was simply an inference from the government that the more and more someone crosses, the reason why they're not nervous is because they've become so acclimated to the process that on the day of his arrest there were no signs of nervousness. Now, this is an argument that involves a number of assumptions. And if this argument sounds familiar, Judge Paez, it's actually an argument from one of your cases in 2003, United States v. Oseguera. It was an unpublished case and so we didn't cite it in our brief. But it's similar to the distinction I want to make is the distinction of crossing and then crossing with drugs. Merely crossing is not probative of whether or not he knew that he was smuggling drugs on the day of his arrest. And I provided that analogy. What was the evidence that the government presented that they argued showed that he had knowledge of the drugs? Your Honor, the government relied heavily. This wasn't the crossings, was it? Your Honor, the government relied heavily on the crossings. That's all they relied on? Well, there was a statement provided by Mr. Jimenez that he was coming from Mexico with a night of partying. And they had an agent testify as to the value of the drugs. The drugs were found underneath the car, on the exterior of the car, inside of a spare tire. The defendant in this particular case invoked and so there were no statements. He did not testify. And so their case was sparse. There's not anything in the record to suggest that they had any evidence that Mr. Jimenez was very nervous on his first crossings but then became less and less nervous as he neared his date of his arrest. Your Honor, if Your Honors do not have any further questions, I'd like to reserve the rest of the time for rebuttal. Any questions? Very well. May it please the Court, Steve Miller for the United States. The issue here is whether or not every act a defendant did before he was caught qualifies as other act evidence under 404B and that simply is not the case. In this case, the evidence of his prior crossings were directly relevant to his dominion and control. Dominion and control is relevant to establish knowing possession. Exclusive dominion and control is relevant to show knowing possession to the exclusion of others. And as with every other border bust, the defense was going to be, I didn't know there were drugs in the car I was driving. So the government's burden to prove that the defendant knowingly had the drugs in the car that he was driving, you had to exclude the other possibilities and the relevant evidence and the affirmative evidence in the government's case in chief. The text, those border crossing reports, whatever they're called. Yes. What did they show in terms of how frequently he had crossed? Let me take just a moment. It showed that he crossed several times during the 40 days that he had possession of the car that he rented. So from those several crossings within that 40-day period. Yes. Your argument is what? Let me hear that again. My argument is that he had exclusive dominion and control of the car that had drugs in it. Because he went over the border three prior, three or four prior times in the 40-day period? And I'll have to correct that. Yes, he went, the evidence shows that he went over the border. But not only that he went over the border, that he went over the border in that car. And every time that he crossed the border in that car, there was no one else in the car. And every time that that car crossed, it was not driven by anyone else except Mr. Jimenez. This is, would be the same as. So is your argument that therefore shows he has control and therefore that car, he was with that car at all times? That shows that since he has dominion and control of that car and that there is no one else linked to that car. He could let his wife, his girlfriend, his wife drive the car. And he may very well have. And, but the other inference is if he had a wife or a girlfriend and they were with him in Mexico, then they would have returned with him. And then that would have been another person to say, that's the person that put the drugs in my car. But since this was a rental car and he had the keys and he brought it down, then he was the one in possession of the keys. And the affirmative evidence at trial in the government's case in chief was that the only way to access the tire was to enter, unlock the car, open up the trunk, use a crank and lower the tire. And the defense rebutted that by saying, oh, well, there's a service tech that can put it up on a lift and use a plier. But the United States affirmative evidence was that if he's going down there and he's the only guy with a key, that in order for someone to put a donut tire. So did your case turn on all this evidence about his crossing back and forth? I mean, is that, was that the critical piece of evidence that you didn't have that in? You were going to, there was a fair chance the jury would turn a not guilty verdict? It was not the exclusive evidence. It was not critical evidence. The reason we brought it in was because in anticipation of the defendant's claim, we knew that the defendant's defense was I didn't know there was drugs in my car. Then we had to anticipate that he was going to argue that someone else put it there. Therefore, we, the evidence showing that the meaning of control was to establish the exclusive possession. And that under the circumstances of him renting the car, possessing it, so we had very concrete instances where he was in exclusive possession of that car. You were able to get in the rental agreement? Yes. But that didn't need the text evidence, did it? No. But it would be no different than if someone, usually when we're talking about dominion control, we're talking about possession of a residence. So the fact that someone rented a house that might have drugs or has marijuana growing in it, you go in there and you find gas and electric bills. So that connects the person to that house. So what was the other evidence that showed he was guilty of knowingly bringing over drugs? That, well, he was in Mexico, that the car was in his name, that when he came over the border, for the government's affirmative evidence, was that since he was in exclusive control, a registered owner or the registered permissive owner of the car with significant amount of drugs, that establishes his knowing possession. And then the text was to rebut the anticipated... What was the quantity of drugs that were in the tire? I think it was just 34 kilograms. Marijuana? Yes. Now, my notes show that this crossing was made in this rental car, I think from very late in December until the end of January, across 13 times. Yes. Now, is it a normal practice when a truck crosses the border, that canine, you have the dogs out there sniffing for drugs? That is quite often the case, but it's not always the case. Sometimes, depending upon the day it is, weekend or work, the hour, you would have dogs that would be roaming pre-primary, sometimes they would have dogs before the primary inspection booths, and the dogs are only used for more intensive inspection in the secondary. Sometimes there's dogs, sometimes there's not. Well, he crossed 13 times in probably a month and a half, and on the other occasions, apparently he got through and there was no problem. And whether he got through or whether... There was nothing suspicious about what he was doing. No. No, nothing suspicious about what he was doing those other times. If, in fact, he had been referred to secondary, I didn't bring that out, because that wasn't what I was offering the evidence for. It was for dominion and control. Now, I would also point out, to your honors, that during the eliminates, I also gave fair warning. Well, you could show dominion and control just by the rental agreement. Yes, but I'm not limited to that. I could show someone who has a house... All these prior crossings were critical, evidence of those prior crossings. But they were relevant admissible evidence to show dominion and control, but as I said... All I asked you was they're critical. They were important for my... Can't you say yes or no? Yes. Okay, thanks. And they were critical for me to rebut the anticipated defense of a third-party possessory interest. And I would also like the court to note, within the last 40 seconds, that in my eliminate response, in the eliminates, I gave fair notice that the other purpose of this was to show lack of nervousness because of acclimation. But not one inference regarding to the nervousness or acclimation or any innuendo that these other texts had to do with crossing drugs on other occasions were not raised until the defendant's closing argument, where he says, surely the government is not suggesting that he's crossing drugs on these other occasions. And then his argument, and there is no nervousness, therefore there is no knowledge. Because if he had been nervous, then he would have known. Since he's not nervous, he did not know. So it was not until the defendant raised that issue, raised that factor, that the United States then used these as a reasonable inference with the established evidence to show an explanation as to why him not being nervous is not mutually exclusive to him knowing the drugs were in his car. I have 40 seconds left. All right. Thank you. Thank you. Your Honors, evidence of Mr. Jimenez's prior crossings were absolutely critical. When Your Honors asked government counsel what affirmative evidence that they had to show that Mr. Jimenez actually knew there were drugs in the car, he stated that he was in Mexico, his name was registered to the car, he was a registered owner of the car, and there was a significant amount of drugs. All of those facts we were willing to stipulate, too. In terms of the significant amount of the drugs, it was actually 27.98 kilograms of marijuana. And as Your Honors pointed out, prior to that date, Mr. Jimenez had never been to secondary. There was no evidence that there were any drugs. By the way, from the text evidence that was admitted, it just shows the crossing. It doesn't show whether or not he was stopped or... It does, Your Honor. It not only shows the days that he crossed and the days that he came back, but also the times, who was in the car, and whether or not that individual had been sent to secondary. Now, in this particular case, the first time Mr. Jimenez had ever been sent to secondary was on the day of his arrest. So were those documents sent into the jury room for the jurors to look at and consider when they deliberated? If my memory serves me correct, the government provided a summary of all of the days that he crossed. The government relied on evidence of his prior crossings in opening statement when he specifically stated... So the raw documents were not admitted? It was a summary? It was a summary of all of the dates, Your Honor, if my memory serves me correct. And when the witness was on the stand when they had these documents and laid a foundation for these documents or whatever, did you ask whether or not they showed that he was sent to secondary? Well, on cross-examination, we did ask the agent if he was ever sent to secondary, and the agent said no. But, Your Honor, the government relied on this evidence in opening statement, in closing statement... And then the judge gave his limiting instruction telling the jury that they couldn't consider this. They couldn't use this text crossing evidence, or they couldn't infer from that that he had crossed drugs in the past. The limiting instruction did say that, Your Honor. This was after the rebuttal argument. However, it did not provide a reason for why the jury could consider it. And if I may, in closing and rebuttable argument, the government was allowed to take advantage of the fact that evidence of his prior crossings had come in. He says, evaluate the defendant's pattern. Evaluate his claim that I'm just going to Mexico to party. The defendant knew exactly what was in that car. He knew exactly what was in the car that he had had for 40 days. Allowing the evidence of his prior crossings to come in allowed the government to insinuate, time after time, using words such as pattern, that Mr. Jimenez had crossed drugs on his previous crossings. And it wasn't until January 31st that he had actually been caught. And if Your Honors don't have any further questions, I will submit. All right. Thank you. Thank you, Your Honor. This matter is submitted.
judges: Pregerson, Noonan, Paez